IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ERIC O'BRIEN JOHNSON, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : CASE NO. 5:13-CV-293-MTT-MSH |
| | : 42 U.S.C. § 1983 |
| GREGORY McLAUGHLIN, *et al.*, | : |
| | : |
| Defendants. | : |

_____

## REPORT AND RECOMMENDATION

Presently pending before the Court is a motion for summary judgment filed by Defendants Blakely, Bobbitt, Curp, Jackson, McLaughlin, Murray, and Spillers.[1] (ECF No. 61.) For the reasons explained below, Defendants' motion for summary judgment should be granted.

## BACKGROUND

On August 16, 2013, Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 claiming that several officers at Macon State Prison assaulted him. (ECF No. 1.) After preliminary review, Plaintiff's claims of excessive force in violation of the Eighth Amendment were allowed to proceed. (ECF No. 5.) Following the close of discovery,

---

[1] Defendant Nathaniel Freeman was never properly served in this case. (*See* USM285 Process Receipt and Return UNEXECUTED, ECF No. 58.) Because the Court finds that the Defendants named in the motion are entitled to summary judgment and recommends dismissal of the case, the Court further recommends that the claims against Defendant Freeman be dismissed as well.

Defendants filed the instant motion claiming they are entitled to summary judgment because the undisputed facts in this case show that no violation of the Eighth Amendment occurred, and they are entitled to qualified immunity. (Br. in Supp. of Defs.' Mot. for Summ. J., ECF No. 61-2.) Defendants have provided video recordings of the incident to support their description of it. Plaintiff responds by arguing that Defendants are not entitled to summary judgment because under his description of the incident, they used excessive force against him without just cause. (Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 68.)[2]

The evidence brought forth in discovery shows the following: On July 26, 2013, Plaintiff Eric O'Brien Johnson, an inmate then confined at Macon State Prison (MSP), was unhappy with the way an officer was dispensing ice. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 3.) In protest, Plaintiff held the flap of his door open and complained. Officers ordered Plaintiff to remove his arms from the flap in his door and allow it to be closed and locked, but he refused. (Defs.' Resp. to Interrogs. 6, ECF No. 61-4.) The video footage shows that when officers approached Plaintiff's cell to secure the flap, Plaintiff had his hands through the flap with an unknown object in his hands. (Defs.' Mot. for Summ. J. Attach. 2, Camera #2 file labeled BOTH1 at 1:39 (hereinafter "Cam #2

---

[2] Multiple other responses and replies have been filed. Defendants argue that Plaintiff's two latest filings, his Second Response (ECF No. 71) and his Surreply (ECF No. 73), should not be considered because they exceed the page limit and because a surreply was not authorized. (Defs.' Notice Objection, ECF No. 74.) Although Defendants are correct in their contentions, the Court will not strike the filings because even after considering them, Plaintiff's arguments do not sway the Court from concluding that no Eighth Amendment violation occurred here and that Defendants are entitled to qualified immunity.

BOTH1").)[3] The footage then clearly shows Plaintiff propel some type of fluid out of the bottle in his hands at the officers and then throw the bottle in their direction. (*Id*. at 1:42 to 1:47.) Plaintiff admits to some fluid being propelled from his cell flap and that he "tossed" a "suntan lotion bottle" out of the flap. (Pl.'s Opp'n 3-4.) The parties dispute the liquid contained in the bottle, but this fact is not material because regardless of the contents Plaintiff's actions were insubordinate and warranted discipline.[4]

After securing the door flap, the officers left Plaintiff in his cell and Defendant Jackson, the shift officer in charge at the time, contacted his immediate supervisor, Unit Manager Bobbitt, to seek instruction on appropriate follow up measures. (Defs.' Interrog. Resp. 7.) Defendant Bobbitt directed that Plaintiff be placed on strip cell for a cool off period based on his conduct. (*Id*.) Defendant Jackson and the officers later returned to Plaintiff's cell to carry out Defendant Bobbitt's instructions.

This encounter was also captured on video cameras. (Defs.' Mot. for Summ. J. Attach. 2, Camera #2 files labeled JOHNSON2 and JOHNSON3 (hereinafter "Cam #2

---

[3] Plaintiff was the only occupant of Cell number 107 at the time of the incident. (Johnson Dep. 23, ECF No. 61-6.)

[4] Defendants contend discipline was justified under Georgia Department of Corrections (GDOC) Standard Operating Procedure (SOP) IIB08-0005, which is entitled "Stripped Cells and Temporary Confiscation of Personal Property." This SOP allows the imposition of the sanction commonly known as "strip cell" where all property, bedding, and clothing are removed from the inmate's possession for a cooling off period when it is determined that an inmate may use the contents of his cell to harm himself or staff or threaten the health or safety of others. Defendants state that this standard is met when an inmate propels unknown fluids out of his cell or fails to follow instructions. It is well settled that the Court "must give a wide range of deference to prison officials acting to preserve discipline and security." *Scroggins v. Davis*, 346 F. App'x 504, 505 (11th Cir. 2009) (internal quotation marks and citation omitted). Therefore, although Plaintiff insists that his actions did not warrant the punishment imposed, Defendants are entitled to much deference in making that decision and the Court will not second-guess Defendants' sanction.

3

JOHNSON2" and "Cam #2 JOHNSON3" respectively).) When Defendant Jackson and the other officers returned to Plaintiff's cell, they instructed him to place his hands through the door flap in order to be handcuffed and he affirmatively refused. (Cam #2 JOHNSON2 at 2:30-2:45.) Plaintiff can be seen and heard in the video recording standing at the cell door, making it clear that he was not asleep on his bunk as he repeatedly claims in his deposition (Johnson Dep. 30-33), but instead that he heard the command and openly refused to comply (Cam #2 JOHNSON2 at 2:30-2:45). Upon Plaintiff's refusal, Defendant Jackson sprayed pepper spray into the cell for two seconds. (*Id*. at 3:00-3:02.) About a minute later (not ten or fifteen minutes as Plaintiff contends[5]), Plaintiff willingly submitted to handcuffs and was removed from the cell and taken to a shower for decontamination. (Cam #2 JOHNSON2 at 4:12-5:55.) Following the decontamination shower, Plaintiff was examined by a nurse and showed no injuries. (Use of Force Assessment 51, ECF No. 61-7.) In fact, Plaintiff admitted at his deposition, "I told her I'm okay. I'm fine." (Johnson Dep. 60.)

While Plaintiff was in the decontamination shower, the officers were stripping his cell of his personal property and bedding in order to carry out the strip cell order. (Defs.' Mot. for Summ. J. Attach. 2, Camera #1 file labeled Video 12 at 2:25-6:55 (hereinafter "Cam #1 Video 12").) After Plaintiff was seen by the nurse, the officers attempted to return him to his cell. Plaintiff was uncooperative with the officers, arguing that he would not be able to breathe and that they had no right to take his property. (Cam #1 Video 12 at 10:43-14:30.) At that time, Defendant Jackson told Plaintiff that he had been

---

[5] *See* Johnson Dep. 33-35, ECF No. 61-6.

instructed by his superior to take everything out of the cell, including his clothing. (*Id*. at 14:54.) Plaintiff refused to give up his clothing willingly, saying "You gonna (sic) have to kill me." (*Id*. at 14:55-17:47.) After making multiple requests, Defendant Jackson ordered the officers to remove Plaintiff's clothing. (*Id*. at 17:48.)

    Four officers who had entered the cell with Plaintiff and Defendant Jackson then attempted to physically restrain Plaintiff and remove his shorts and underpants, which were the only articles of clothing on Plaintiff's person. (*Id*. at 17:49-18:33.) At minute 17:59 in the video recording, it is clear that Plaintiff was resisting the officers as he can be seen pushing forward and struggling with the officers. (*Id*. at 17:59.) At minute 18:33, after Plaintiff's clothing had been removed, he again began struggling with the officers and Defendant Jackson then ordered that they take Plaintiff to the ground in order to get him under control. (*Id*. at 18:33-18:44.) The video recording captured the entire incident. None of the officers punched, kicked, or kneed Plaintiff in any manner. (*Id*.) Plaintiff can then be heard saying that he intended to "cash in" on this incident. (*Id*. at 19:09.) In his deposition, Plaintiff contends that all of the physical violence inflicted upon him and causing his injuries occurred during the takedown in his cell when he refused to comply with Defendant Jackson's order. (Johnson Dep. 43-44.) Again, the entire incident inside the cell is depicted in the video.

    Plaintiff was held on the ground until a nurse could arrive to assess his injuries. (Cam #1 Video 12 at 18:44-21:45.) Plaintiff was then taken from the cell to be checked by the nurse, who found that he had an approximately one-inch laceration above his left eye. (Use of Force Assessment 55, ECF No. 61-7.) It was determined that Plaintiff

needed to go to the emergency room for treatment, so he was taken to Flint River Community Hospital where he was treated for the wound above his eye and a superficial laceration to his bottom lip.  (Discharge Instructions from ER 12, ECF No. 61-8.)

## DISCUSSION

### I.     Standard of Review

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

### II.    Qualified Immunity

Defendants Blakely, Bobbitt, Curp, Jackson, McLaughlin, Murray, and Spillers contend that summary judgment should be granted to them in their individual capacities because they are entitled to qualified immunity.  "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *Anderson v. City of Naples*, 501 F. App'x 910, 915-16 (11th Cir. 2012) (internal quotation marks and citation omitted).

"The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.* Once the defendant shows that he was acting within his discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004). In this case, it is undisputed that Defendants were acting within the scope of their discretionary authority as corrections officials by administering the prison when the events in question took place. Because that determination is made, the burden now shifts to Plaintiff to show that the Defendants are not entitled to qualified immunity.

"To overcome an official's claim of qualified immunity, the plaintiff must show that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the alleged violation." *Anderson*, 501 F. App'x at 916 (citation omitted).[6] Whether an Eighth Amendment constitutional violation occurred "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline[,] or [whether force was applied] maliciously and sadistically for the very

---

[6] Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first. *McCullough*, 559 F.3d at 1205.

purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotation marks and citation omitted). Therefore, the facts in evidence must be sufficient for a reasonable jury to find that the Defendants acted with a purpose to cause harm.

In order to determine if force was used "maliciously and sadistically to cause harm," the Court looks to: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (internal quotation marks and citation omitted). Additionally, Plaintiff must show that "a requisite amount of force was used against him." *Smith v. Vavoulis*, 373 F. App'x 965, 966 (11th Cir. 2010). In other words, the use of force must be more than *de minimis. Id.*

Here, Plaintiff contends that the actions of Defendants amounted to excessive force in violation of his Eighth Amendment rights. Specifically, Plaintiff alleges that he "was sprayed with Chemical Agents, slamed (sic) into a concrete floor, punched and kicked, without penological justifications and used 'maliciously and sadistically' for the very purpose of causing Plaintiff harm." (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 1.) These allegations, taken at face value, track the Supreme Court's language for actions which constitute a violation of the Eighth Amendment. This is not enough, however, to prevent summary judgment.

In reviewing a motion for summary judgment the Court takes the evidence in the light most favorable to the non-moving party, but the non-moving party may not merely

rest on his allegations when evidence is presented that firmly rebuts those allegations. "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion [] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (internal quotation marks and citations omitted) (alterations in original). "The burden then shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Id.* (internal quotation marks and citations omitted). "The nonmoving party does not satisfy its burden if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact." *Id.* (internal quotation marks and citations omitted).

The evidence in this case shows that no constitutional violation has occurred and Defendants are entitled to qualified immunity. Defendants used force against Plaintiff, but only such force as was necessary to maintain order at the prison. The entire incident was captured on two hand-held video cameras, and the evidence contained in these video recordings clearly rebuts Plaintiff's allegations that excessive force was applied. Defendants' burden thus being carried, Plaintiff must put forth sufficient evidence to show that a genuine issue of material fact remains to be determined by a jury. Plaintiff has not made such a showing here.

The five factors discussed above all weigh in favor of Defendants. The injury to Plaintiff was small, although not negligible. Plaintiff was promptly treated with "liquid

sutures" at the hospital and his lacerations did not require physical stitches.  (Johnson Dep. 47.)  Plaintiff concedes that he repeatedly refused to follow Defendant Jackson's order to submit to the strip cell requirements.  (*Id*. at 38.)  Defendants are tasked with maintaining order within the prison, which requires that when prisoners refuse orders or act out, as Plaintiff has admitted to doing, some type of sanction must be imposed.  As stated above, the Court defers to prison officials in determining the appropriate sanction so long as the sanction itself is not a violation of the Eighth Amendment.  The removal of an inmate's personal property and bedding for a short cooling off period is clearly within the bounds of the Eighth Amendment.  *See e.g. Sims v. Mashburn*, 25 F.3d 980, 984 (11th Cir. 1994).  As Plaintiff had violated the rules and was then refusing to submit to the standard punishment for that violation and was physically struggling with the officers, Defendants were justified in deciding that he needed to be taken to the ground in order to be controlled.

Furthermore, the video recordings show that the officers used no more force than was necessary to take Plaintiff to the ground.  Plaintiff can clearly be seen struggling with the officers as they attempt to bring him down.  No punches, kicks, knees, or choking can be seen on the video recordings.  The relationship between the amount of force used and the need for that force was clearly reasonable here.  In fact, as the fourth prong asks, Defendant Jackson's patience in allowing Plaintiff to argue with him for nearly ten minutes about the instruction from Defendant Bobbitt shows that Defendants made significant efforts to temper the force used against Plaintiff.  Defendants gave Plaintiff every opportunity to avoid the use of force that they eventually employed.

Finally, Plaintiff's consistent refusal to follow the commands of the officers shows that it was reasonable for Defendants to believe that they needed to use some force to bring him under control.  Therefore, the five prong test for determining whether force was used in good faith or "maliciously and sadistically" to cause Plaintiff harm clearly comes out in favor of Defendants' actions in this incident.  Thus, Plaintiff has not shown that there is a genuine issue of material fact as to the question of whether an Eighth Amendment violation occurred in this case.  Since no constitutional violation occurred, Defendants are entitled to qualified immunity.  *See Anderson*, 501 F. App'x at 916. Defendants' motion for summary judgment should therefore be granted.

## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment (ECF No. 61) should be granted.   Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

SO RECOMMENDED, this 12th day of December, 2014.

/s/ STEPHEN HYLES
UNTED STATES MAGISTRATE JUDGE